BE THEIN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| EFFIE MARY SIMMONS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No: 1:14-cv-01070-STA-tmp |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER**

Plaintiff Effie Mary Simmons filed this action to obtain judicial review of Defendant Commissioner's final decision denying her applications for disability insurance benefits under Title II of the Social Security Act ("Act") and for Supplemental Security Income ("SSI"). Plaintiff's applications were denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on October 4, 2012. On October 26, 2012, the ALJ denied the claim. The Appeals Council subsequently denied her request for review. Thus, the decision of the ALJ became the Commissioner's final decision. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the

cause for a rehearing."[1] The court's review is limited to determining whether there is substantial evidence to support the Commissioner's decision,[2] and whether the correct legal standards were applied.[3]

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] It is "more than a mere scintilla of evidence, but less than a preponderance."[5] The Commissioner, not the Court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly.[6] When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.[7]

Plaintiff was born on January 2, 1962, and she alleges that she became disabled on March 31, 2009, when she was forty-seven years old.[8] She initially alleged disability due to carpal

---

[1] 42 U.S.C. § 405(g).

[2] *Id.*

[3] *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). *See also Landsaw v. Sec'y of Health & Human Servs*, 803 F.2d 211, 213 (6th Cir. 1986).

[4] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)).

[5] *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[6] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

[7] *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

[8] (R. 12, 144, 151, ECF No. 11.)

tunnel and diabetes.⁹ She later added allegations of disability due to anxiety and depression.¹⁰ Plaintiff has a high school education; previous work experience includes a job as a plastics manufacturing mold operator and as an air conditioner manufacturing assembler.¹¹

The ALJ made the following findings: (1) Plaintiff met the insured status requirements through September 30, 2011; (2) Plaintiff has not engaged in substantial gainful activity since the alleged onset date; (3) Plaintiff has the following severe impairments: depressive disorder and anxiety disorder; but she does not have impairments, either alone or in combination, that meet or equal the requirements of any listed impairment contained in 20 C.F.R. pt. 404, subpt. P, app. 1 of the listing of impairments; (4) Plaintiff retains the residual functional capacity to perform a full range of work at all exertional levels with the following non-exertional limitations: Plaintiff can understand and remember simple and lower level one to three step detailed tasks; she can sustain concentration and persistence for periods of at least two hours in an eight hour day with customary breaks; and she can interact with the public, supervisors, and coworkers, and adapt to infrequent workplace changes; (5) Plaintiff is able to perform her past relevant work as an assembler of small parts; (6) Plaintiff was not under a disability as defined in the Act at any time through the date of this decision.¹²

The Social Security Act defines disability as the inability to engage in substantial gainful activity.¹³ The claimant bears the ultimate burden of establishing an entitlement to benefits.¹⁴

---

⁹ (*Id.* at 171.)

¹⁰ (*Id.* at 203.)

¹¹ (*Id.* at 77, 80.)

¹² (*Id.* at 14-22.)

¹³ 42 U.S.C. § 423(d)(1).

The initial burden of going forward is on the claimant to show that he is disabled from engaging in his former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background.[15]

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

    1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

    2. An individual who does not have a severe impairment will not be found to be disabled.

    3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

    4. An individual who can perform work that he has done in the past will not be found to be disabled.

    5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.[16]

Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis.[17] Here, the sequential analysis proceeded to the fourth step with a finding that Plaintiff can perform her past relevant work. The Court finds that substantial evidence supports this determination.

---

[14] *Born v. Sec'y of Health & Human Servs*, 923 F.2d 1168, 1173 (6th Cir. 1990).

[15] *Id.*

[16] *Willbanks v. Sec'y of Health & Human Servs*, 847 F.2d 301 (6th Cir. 1988).

[17] 20 C.F.R. § 404.1520(a).

Plaintiff argues that the ALJ erred in the weighing of the medical evidence and that this error adversely affected the ALJ's residual functional capacity finding. She also argues that the ALJ's analysis of her subjective complaints was improper and that he failed to consider the limitations caused by her anxiety. Plaintiff's arguments are not persuasive.

Medical opinions are to be weighed by the process set forth in 20 C.F.R. § 404.1527(c). Generally, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination,[18] and an opinion from a medical source who regularly treats the claimant is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship.[19] In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."[20]

Under the treating physician rule, an ALJ must give controlling weight to the opinion of a claimant's treating physician if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."[21] The term "not inconsistent" is meant to convey that "a well-supported treating source medical opinion need not be supported directly by all of the other evidence, (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion."[22]

---

[18] 20 C.F.R. § 404.1502, 404.1527(c)(1).

[19] *Id.* § 404.1502, 404.1527(c)(2).

[20] Soc. Sec. Rul. No. 96–6p, 1996 WL 374180 at *2.

[21] 20 C.F.R. § 404.1527(c)(2).

[22] Soc. Sec. Rul. No. 96–2P, 1996 WL 374188 at *3 (July 2, 1996).

Opinions from non-treating sources are not assessed for controlling weight. Instead, these opinions are weighed based on specialization, consistency, supportability, and any other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion.[23] State agency consultants are highly qualified specialists who are also experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions.[24]

In the present case, the ALJ properly weighed the medical evidence. Charles Settle, M.D., completed a physical assessment of Plaintiff and reviewed the evidence in the Plaintiff's medical file. He found no exertional or postural limitations and noted that x-rays and physical examination findings were normal.[25] The ALJ's finding that Plaintiff could perform work at all exertional levels is supported by Dr. Settle's opinion.

Ed Crosthwait, M.D., a general medicine practitioner, also conducted a consultative physical examination. He observed that Plaintiff's gait and range of motion were normal, and she could rise from a seated position without difficulty.[26] Dr. Crosthwait opined that Plaintiff could lift fifty pounds occasionally and carry twenty pounds occasionally.[27] She could sit, stand, and walk up to three hours each at a time, and sit, stand, and walk for up to eight hours total in an

---

[23] 20 C.F.R. § 404.1527(c).

[24] *See* 20 C.F.R. § 404.1527(e)(2)(i); Soc. Sec. Rul. No. 96-6p, 1996 WL 374180, 61 Fed. Reg. 34,466-01 (July 2, 1996).

[25] (R. 567-68, 572-73, ECF No. 11.)

[26] (*Id.* at 534.)

[27] (*Id.* at 527.)

eight-hour workday, and she could frequently reach with both hands.[28] She could continuously handle, finger, and feel with both hands; occasionally operate foot controls, climb stairs, ramps, ladders, or scaffolds, and balance, stoop, kneel, crawl, and crouch; occasionally be exposed to unprotected heights, moving mechanical parts, humidity and wetness, extreme hot and cold, and vibrations; occasionally operate a motor vehicle; never be exposed to dust, odors, fumes, and pulmonary irritants; shop, travel alone, walk without assistance, prepare meals, work with paper, and care for her own personal hygiene; and walk for eight hours a day, five days a week.[29] Dr. Crosthwait found no reason why Plaintiff would be unable to work eight hours a day, five days a week.

Consulting physician Saul Juliao, M.D., opined that Plaintiff could lift fifty pounds occasionally and twenty-five pounds frequently; stand/walk six hours in an eight-hour workday; and pull and push without limitation.[30] Additionally, she could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl and occasionally climb ladders, ropes, and scaffolds.[31]

Although Dr. Juliao and Dr. Crosthwait found that Plaintiff could perform work at the medium exertional level, the ALJ determined that those limitations were not supported in that x-rays and physical examination findings did not show any underlying conditions that would limit

---

[28] (*Id.* at 528.)

[29] (*Id.* at 529-32.)

[30] (*Id.* at 509-16.)

[31] (*Id.* at 510.)

7

Plaintiff's ability to perform work at all exertional levels. Instead, the ALJ gave the greatest weight to Dr. Settle's opinion.[32]

The ALJ's mental residual functional capacity findings are also supported by the record, including the report from mental health consultative examiner Stephen Rutledge, Ph.D., as well as Plaintiff's reported activities. Dr. Rutledge noted that Plaintiff's cleanliness and hygiene were good; her clothing was appropriate; and her gait and rate, volume, and clarity of speech were normal. Plaintiff was alert and oriented, with coherent, easy to understand responses, and clear, logical thought processes. Plaintiff denied any treatment for mental health issues. She complained of problems with short-term memory and performed poorly in the digit span. Plaintiff reported that she last worked at a factory in 2008 and previously worked on an assembly line for ten years but was fired for absenteeism.[33] Plaintiff claimed difficulty with sleep but did not use any sleeping aids. She described her mood as "pretty good" but stated that she gets irritated quickly and has frequent panic attacks.[34]

Dr. Rutledge diagnosed anxiety disorder and opined that Plaintiff showed moderate to marked impairment in her ability to sustain concentration; moderate impairment in long term and remote memory; moderate impairment in social function; and mild impairment in her ability to adapt to change[35] The ALJ found that Plaintiff had moderate difficulties in concentration, persistence, or pace, and he accounted for these difficulties by limiting Plaintiff to simple tasks.

---

[32] (*Id.* at 19-20, 572.)

[33] (*Id.* at 540-41.)

[34] (*Id.* at 537-39.)

[35] (*Id.* at 541-45.)

8

In support of her argument that the ALJ failed to consider her anxiety in the residual functional capacity assessment, Plaintiff points to her own testimony at the hearing that she suffers from panic attacks and is unable to be in crowds or sit without being worried about panic attacks.[36] However, Plaintiff does not specify what, if any, additional limitations should have been included or identify objective evidence to support those limitations.

Although consultative examiners opined that Plaintiff had moderate difficulties in maintaining social functioning, the ALJ found that Plaintiff could interact with others and adapt to infrequent workplace changes. "The ALJ is not required to simply accept the [opinion] of a medical examiner based solely on the claimant's self-reports of symptoms, but instead is tasked with interpreting medical opinions in light of the totality of the evidence."[37] Supporting the ALJ's determination is evidence that Plaintiff talked to her best friend every day, and she reported no problems getting along with authority figures or others in the work environment.[38] Dennis Wilson, Ph.D., a consultative examiner, found that Plaintiff was able to communicate well and should be able to communicate adequately with supervisors and coworkers.[39] Moreover, Plaintiff sought no mental health treatment during the alleged period of disability, which is inconsistent with her allegation that more limitations are warranted.[40]

---

[36] (*Id.* at 42-44.)

[37] *Griffith v. Comm'r of Soc. Sec.*, 2014 WL 3882671 at * 8 (6th Cir. Aug. 7, 2014) (citing 20 C.F.R. § 416.927(b)).

[38] (R. 16, 191, 226, 245, 541, 573, ECF No. 11.)

[39] (*Id.* at 482.)

[40] Andrew Phay, Ph.D., reviewed the mental assessment completed on April 5, 2011, and confirmed it as still accurate. Dr. Phay observed that Plaintiff had no mental health treatment and did not allege that the severity of her mental symptoms had increased. (*Id.* at 582.)

Accordingly, substantial evidence supports the weight given to the medical evidence and opinions in the record and the assessment of Plaintiff's physical residual functional capacity. The ALJ properly determined that Plaintiff could perform a full range of work at all exertional levels with certain non-exertional limitations, and Plaintiff has failed to show that she is otherwise more limited.

Next, Plaintiff argues that the ALJ failed to give adequate weight to her subjective testimony. A claimant's credibility comes into question when her "complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence.[41] "To assess credibility, the ALJ must consider "the entire case record," including "any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record."[42] This Court is required to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying."[43] However, the ALJ's credibility finding "must find support in the record."[44]

Here, the Court finds no error in the ALJ's credibility determination because Plaintiff did not provide objective medical evidence to establish the intensity and persistence of her alleged symptoms, and the record as a whole does not indicate that her condition was of disabling severity. Although Plaintiff presented objective medical evidence of underlying medical

---

[41] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

[42] *Id.*

[43] *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citations omitted).

[44] *Id.*

conditions, i.e., carpal tunnel, diabetes mellitus, anxiety, and depression, and the ALJ found that these impairments could reasonably cause the kind of limitations as alleged by Plaintiff, the ALJ also found that Plaintiff's statements about the intensity, persistence, and limiting effect of her alleged symptoms were not entirely credible because they were inconsistent with the evidence of record.[45]

First, the ALJ noted that the objective medical evidence did not support Plaintiff's claims. For example, Plaintiff alleges that her carpal tunnel surgeries were unsuccessful and left her with "debilitating pain and lack of use of her hands," but she points to nothing objective in the record to support this allegation. After the second surgery, Plaintiff had good sensation and was doing fine, and she was able to return to work.[46] Plaintiff sought no further medical treatment for wrist issues for more than five years, until July 2011, when she saw a doctor and complained of wrist pain; she was instructed to wear wrist splints at night.[47] She made no ongoing complaints of wrist or hand issues and sought no additional medical treatment. No nerve conduction studies supported ongoing complaints of carpal tunnel.[48] As noted by the ALJ, if Plaintiff were experiencing a disabling level of symptoms related to carpal tunnel syndrome, her treatment records would reflect ongoing complaints about those symptoms. The absence of such complaints is inconsistent with her subjective claims.

---

[45] *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529(c) (stating that an ALJ is required to analyze the intensity and persistence of the claimant's symptoms if there is objective evidence of a medical condition that could reasonably cause the alleged impairments).

[46] (R. 291, ECF No. 11.)

[47] (*Id.* at 587-88.)

[48] (*Id.* at 583.)

Additionally, Plaintiff's testimony was inconsistent with other evidence. Plaintiff stated that she was unable to pull an aluminum pop can tab, open a twist jar, or use a manual can opener because her hands lock up and she has difficulty combing her hair because it hurts to raise her arms.[49] Elsewhere in the record, however, she indicated that she had no difficulties with self-care and personal grooming.[50] Her hobbies are doing puzzles and crosswords, activities that require some degree of manual dexterity and fine motor skill.[51] Plaintiff claimed that it was difficult for her to drive a car because her hands were tired and numb from holding the steering wheel.[52] The record, however, shows that Plaintiff was able to drive but did not have a car.[53] Such inconsistencies impugn Plaintiff's credibility.[54]

Plaintiff complained of disabling issues with her feet, but Plaintiff did not allege disability due to any issues with her feet. There is no evidence to show that she had ongoing medical problems or sought treatment for foot problems until two years after her alleged onset of disability.[55]

Although Plaintiff alleges that her diabetes is disabling, she remained able to work for years, even with the diabetes, and there is no evidence in the record to show that Plaintiff's

---

[49] (*Id.* at 38-39.)

[50] (*Id.* at 186, 193, 221-22, 240.)

[51] (*Id.* at 541.)

[52] (*Id.* at 42.)

[53] (*Id.* at 188, 194, 223, 479, 541.)

[54] *See Stroud v. Comm'r of Soc. Sec.*, 504 F. App'x. 458 (6th Cir. 2012) (citing *Jones*, 336 F.3d at 476–77 (holding that an ALJ's credibility determination was reasonably based on the claimant's inconsistent testimony)).

[55] (R. 450-55, ECF No11.)

condition worsened in severity.[56] For example, the record documents no evidence of diabetic retinopathy, peripheral neuropathy, or other organ damage due to diabetes, and there are no ongoing complaints of shortness of breath, chest pain, abnormal heart rate, blurred vision, dizziness, or persistent headache. Treatment records show that Plaintiff's diabetes was generally controlled when Plaintiff checked her blood sugars and took proper medication. Disability is not supported when an individual's impairments improve with medication.[57] Plaintiff's lack of complaints and failure to seek treatment for her diabetes for long intervals during the course of her alleged disability are inconsistent with her allegations of disabling symptoms.

At step four of the sequential analysis, the ALJ compares the claimant's residual functional capacity with the requirements of the claimant's past work.[58] Past relevant work is, generally, a job that was performed within the last fifteen years, performed long enough to learn how to perform the job, and was substantial gainful activity.[59] If the past job did not require the claimant to perform activities in excess of the claimant's residual functional capacity, the claimant will be found not disabled.[60] A claimant must prove that she is unable to return to her past relevant work either as she performed that work or as that work is generally performed in the national economy.[61] Plaintiff has failed to carry her burden of proof.

---

[56] (*Id.* at 322-24, 504.)

[57] *See Smith v. Comm'r of Soc. Sec.*, 2014 WL 1663028 (6th Cir. April 25, 2014) (citation omitted) (evidence that medical issues can be improved when using prescribed drugs supports denial of disability benefits)).

[58] 20 C.F.R. §§ 404.1520(e), 404.1560(b).

[59] 20 C.F.R. § 404.1565(a).

[60] 20 C.F.R. §§ 404.1520(e), 404.1560(b), 404.1561.

[61] *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The ALJ found that Plaintiff could perform her past relevant work as a small parts assembler and, therefore, was not disabled. Plaintiff held the position of a small parts assembler on an assembly line at KAZ USA for ten years within the last fifteen years.[62] She worked long enough to learn the essential functions of the job, and she performed the work at the substantial gainful activity level. In comparing Plaintiff's residual functional capacity with the physical and mental demands of work as a small parts assembler, consistent with the requirements of 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2), the ALJ determined that Plaintiff would not be precluded from performing this past work.

Additionally, the ALJ determined that, given Plaintiff's capacity to perform a wide variety of unskilled work at all exertional levels, a finding of not disabled would be directed under the framework of section 204.00 of the Medical-Vocational Guidelines. The ALJ found that there were other jobs that exist in significant numbers in the national economy that Plaintiff would be able to perform. Accordingly, substantial evidence supports the ALJ's finding that Plaintiff is not disabled.

Because substantial evidence supports the ALJ's determination that Plaintiff was not disabled, the decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: November 16, 2016.

---

[62] (R. 21, 164-65, ECF No 11.)